UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CRYSTAL R. KELLY                                                                                         PLAINTIFF

V.                                      No. 4:22-CV-00951-LPR-BBM

MARTIN O'MALLEY[1], Commissioner,
Social Security Administration                                                                DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

I.  **INTRODUCTION**

On August 6, 2020, Plaintiff Crystal R. Kelly ("Kelly") applied for Title II disability and disability insurance benefits. (Tr. at 52). On the same day, Kelly applied for Title XVI supplemental security income benefits. *Id.* In both applications, Kelly alleged that her

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner O'Malley is automatically substituted as the Defendant.

disability began on July 9, 2020. *Id*. The applications were denied at the initial administrative level and upon reconsideration. *Id*.

A hearing on Kelly's applications was held before an Administrative Law Judge ("ALJ") on October 18, 2021. *Id*. In a written decision dated November 26, 2021, the ALJ found that Kelly was not disabled. (Tr. at 52–67). The Appeals Council denied Kelly's request for review of the ALJ's decision on September 6, 2022. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Kelly has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision denying benefits and remand the case for further administrative review.

## II. THE COMMISSIONER'S DECISION

Kelly was born on August 10, 1971, has a high-school education, and worked in the past as a medical assistant. (Tr. at 65). She meets the insured status requirements of the Social Security Act through December 31, 2025.[2] (Tr. at 55).

The ALJ found that Kelly had not engaged in substantial gainful activity since the alleged disability onset date of July 9, 2020.[3] *Id*. At Step Two, the ALJ found that Kelly

---

[2] Insured status refers to a claimant having enough qualifying past work to provide eligibility for Title II benefits. Title XVI benefits do not have an insured status requirement.

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

had the following severe impairments: obesity, right wrist tenosynovitis, osteoarthritis in the knee, bilateral ankle osteoarthritis, rheumatoid arthritis ("RA"), lumbar spine degenerative disc disease ("DDD"), and anxiety. *Id.*

After finding that Kelly's impairments did not meet or equal a Listed Impairment[4] at Step Three (Tr. at 55–57), the ALJ determined that Kelly had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional restrictions: (1) no more than frequent handling duties; (2) no lower extremity foot control operation duties; (3) simple, routine, and repetitive task jobs; (4) supervision that is simple, direct, and concrete; and (5) reasoning levels not to exceed two. (Tr. at 57).

The ALJ, at Step Four, determined that Kelly is unable to perform any of her past relevant work. (Tr. at 65). Moving to Step Five, the ALJ relied upon the testimony of the Vocational Expert ("VE"), to find that, based on Kelly's age, education, work experience, and RFC, jobs exist in the national economy that she could perform. (Tr. at 65–67). Therefore, the ALJ found that Kelly was not disabled. *Id.*

### III. KELLY'S ARGUMENTS ON APPEAL

Kelly contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Kelly argues that: (1) the ALJ did not properly evaluate her obesity; (2) the ALJ's Step Three Listed Impairments analysis was insufficient; (3) the ALJ erred in his treatment of the medical opinions of her treating providers; and (4) the ALJ's analysis

---

[4] 20 C.F.R. Part 404 Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). The Adult Listing of Impairments is a summary of medical conditions with details about their signs, symptoms, and treatment. https://www.ssa.gov/disability/professionals/bluebook/AdultListings.htm. Step Three considers whether a claimant has met a Listed Impairment, which would mean she is disabled.

of Kelly's subjective complaints was deficient. The Court finds support for Kelly's final argument.

## IV.  DISCUSSION

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. The Commissioner's Decision is Not Supported by Substantial Evidence.

When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

Here, the ALJ did not attempt to harmonize Kelly's statements about her activities on the function reports with her statements at the hearing. *See Adams v. Comm'r, SSA*, 2021 WL 3711194 *4 (W.D. Ark. Aug. 20, 2021) (holding ALJ improperly discounted subjective complaints). In fact, the ALJ did not discuss Kelly's testimony about her deteriorating condition at all. By law, the ALJ is *required* to make consistency determinations regarding Kelly's subjective complaints as stated in her testimony.[5] *See Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991) ("If an ALJ rejects a claimant's testimony regarding pain, he must make an express credibility determination detailing his

---

[5] Social Security Rule 16-3p removed the word "credibility" from the analysis of a plaintiff's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. *See* Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017) ("In [eliminating reference to "credibility"], we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation."). However, the Eighth Circuit has found that this revision "largely changes terminology rather than the substantive analysis to be applied." *Lawrence v. Saul*, 970 F.3d 989 n.6 (8th Cir. 2020); *see also Noerper v. Saul*, 964 F.3d 738, n.3 (8th Cir. 2020).

reasons for discrediting the testimony.") (citing *Prince v. Bowen*, 894 F.2d 283, 286 (8th Cir. 1990)); *see also Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000) ("The ALJ was required to make an express credibility determination explaining why he did not fully credit [Plaintiff's] complaints."); *Ghant v. Bowen*, 930 F.2d 633, 637 (8th Cir. 1991) ("An ALJ who rejects a claimant's complaints, however, must make an express credibility determination explaining his reasons for discrediting the complaints."); *Lanning v. Heckler*, 777 F.2d 1316, 1317 (8th Cir. 1985) ("The ALJ, however, failed to make an express credibility determination detailing why he rejected Lanning's testimony, as required by this Court.").

Kelly explained at the hearing that her health had gotten worse, and medical records support that assertion. The ALJ noted in his decision that, despite aggressive immunosuppressive therapy, Kelly's RA continued to be debilitating. (Tr. at 64). When there is a conflict in the record, or a condition gets worse, the ALJ should explain how he resolved the conflict, and he should further develop the record. *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005); *Cline v. Colvin*, 771 F.3d 1098, 1106 (8th Cir. 2014); *see also Smajic v. Berryhill*, 2019 WL 183980 *4 (W.D. Mo. Jan. 14, 2019) (holding an ALJ must "show his work.").

The record in this case demonstrates that Kelly had RA that persisted in spite of multiple treatment modalities. (Tr. at 169-173, 532-538). She had tender and swollen joints on clinical exam. *Id*. at 535. In November 2020, Kelly's rheumatologist wrote that RA was poorly controlled. *Id*. at 536. At that time, Kelly informed him that her pain prevented her from performing daily activities. (Tr. at 532). In February 2021, Kelly's treating nurse,

6

Debra Brent, concluded that Kelly needed to be on more aggressive immunosuppressant therapy. (Tr. at 584). Nurse Brent noted a "massive amount of swelling" in both of Kelly's wrists. (Tr. at 580). At that point, Nurse Brent said that, due to severe RA, Kelly would not be able to maintain gainful employment. *Id*.

Kelly suffered from severe pain in her right foot, and x-rays revealed bilateral subtalar arthrosis. (Tr. at 603). Kelly said that using a walker did not help. *Id*.

Pain management records from September 2021 showed painful movement in Kelly's hip and low back. (Tr. at 629). She rated her pain at a 10 out of 10. *Id*. The pain management specialist wrote that Kelly's pain was not being managed by her current medication regimen. (Tr. at 632). A lumbar spine MRI showed broad-based disc bulges, facet hypertrophy, and nerve root involvement. *Id*., (Tr. at 647–648). Activity modification did not help. Kelly treated her pain with medication, injections, physical therapy, and a TENS unit, which were generally ineffective (Tr. at 139–144, 357).

The tenosynovitis in her right wrist meant that Kelly could not even open a pill bottle or type. (Tr. at 56–57). Her daughter had to dispense her medications for her. *Id*. Kelly was fired from her most recent job for not having the required manual dexterity. (Tr. at 138–139).

Kelly was taking multiple medications for mental impairments, although she did not receive specialized psychiatric care. She took Lexapro for anxiety, which did not help. (Tr. at 574). She complained of trouble falling asleep and staying asleep, attributable to both mental and physical problems. (Tr. at 577–580). In March 2021, she reiterated to her primary-care physician that anxiety medications were not working, and insomnia was

worse. (Tr. at 686).

Kelly's daughter filled out function reports in August 2020 and February 2021. (Tr. at 360–367, 390–396). The report is a standard form that claimants or their representatives complete so the Commissioner can understand how their impairments impact their daily lives. The reports stated that Kelly could do things like cook meals, drive, do some housework, socialize on the phone, and shop. *Id*. But it also stated that she needed help from her daughter with these things. *Id*.

At the administrative hearing in October 2021, however, Kelly testified that, for the last six months, she needed assistance to do almost everything; her daughter helped in almost every aspect of her life. (Tr. at 139–145). She testified that she no longer did chores or cooked daily meals, for example. *Id*. This suggested deterioration in her condition.

The ALJ simply failed to discuss or even acknowledge Kelly's testimony regarding her limitations in performing daily activities. Instead, the ALJ wrote that Kelly could prepare daily meals, drive a car, go out alone, and go shopping in stores. (Tr. at 59). He concluded that Kelly was not as limited as her daughter described and that her daughter's statements in the August 2020 and February 2021 treatment reports were inconsistent with the record evidence. *Id*. In sum, the ALJ ignored Kelly's testimony about her worsening condition and inability to perform normal daily activities. This was error.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be REVERSED, and the case be REMANDED for further administrative review.

2. Kelly's Motion for Leave to File Additional Evidence (Doc. 9) be DENIED, as moot.

DATED this 9th day of February, 2024.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE