IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CRYSTAL R KELLY**                                                                                       **PLAINTIFF**

**v.**                                  **Case No. 4:22-CV-00951-LPR**

**MARTIN O'MALLEY, Commissioner,**
**Social Security Administration**                                                                         **DEFENDANT**

**ORDER**

      The Court has reviewed the Recommended Disposition (RD) submitted by United States Magistrate Judge Benecia B. Moore.[1]  No objections have been filed, and the time for doing so has expired.  After a *de novo* review of the RD and careful consideration of the entire case record, the Court adopts the RD's conclusion that this case be reversed and remanded for further administrative review based on the ALJ's failure to properly consider Ms. Kelly's subjective complaints.  However, rather than adopt the RD's analysis, the Court instead provides the following independent analysis as support for this conclusion.

      "When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions."[2]  An ALJ does not need to explicitly discuss each of the *Polaski* factors, and the ALJ can reject complaints which are inconsistent with the evidence as a whole.[3]  However, "the ALJ may not discount subjective complaints solely because they are not supported

---

[1] Doc. 18.

[2] *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

[3] *Id*.

1

by objective medical evidence."[4]  A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."[5]

Here, the Court finds that the ALJ failed to provide a good reason for discounting the credibility of Ms. Kelly's subjective complaints.  As far as the Court can tell, the ALJ's credibility determination is based solely on Ms. Kelly's activities of daily living (ADLs) and her reports of improvement to medical providers as recorded in their treatment notes.  But these reasons alone are unconvincing, as they are not necessarily inconsistent with Ms. Kelly's alleged symptoms and limitations.

Consider the medical records.  The ALJ does not explicitly state what portions of the medical evidence are "not entirely consistent" with Ms. Kelly's subjective complaints, but the Commissioner points to three examples to support the ALJ's finding.  The first example is a note from Ms. Kelly's PCP that her rheumatoid arthritis was "stable" on February 5, 2021.[6]  As the ALJ noted in his decision, however, Ms. Kelly had seen her rheumatologist just the day before, and the rheumatology records reveal that Ms. Kelly's rheumatoid arthritis was "poorly controlled" and causing a "massive amount of swelling" in both of her wrists which was likely causing her carpal tunnel syndrome symptoms.[7]  For a second example, the Commissioner points to Ms. Kelly's October 2021 statement at physical therapy that "her knee and [right] hip feel better than they have in a while."[8]  But this isolated statement does not indicate that Ms. Kelly's impairments were "reasonably controlled with treatment" and thus somehow inconsistent with her allegations of

---

[4] *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008).

[5] *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

[6] *See* Tr. at 61, 574; Def.'s Br. at 15.

[7] Tr. at 580, 584.

[8] Tr. at 622.

disabling pain and limited mobility.[9]

For a third and final example, the Commissioner emphasizes Ms. Kelly's August 2021 report that an increase in medication had "helped some with her rheumatoid arthritis symptoms."[10] But immediately thereafter, the treatment notes qualify that statement: "Primarily she has noticed less pain and stiffness in her ankles but states that her hip and hand pain is about the same."[11] Moreover, on the same page of treatment notes, her provider writes:

> Unfortunately despite aggressive immunosuppressive therapy [Ms. Kelly's] rheumatoid arthritis continues to be debilitating. She is unable to grip and curl or perform fine motor skills with her hands. She is unable to sit or stand for any length of time. She is unable to stoop or [bend] or pick up anything heavier than 10 [pounds]. Inactivity does cause increased stiffness in her joints but with lengthy activity anything greater than 30 minutes she has flare of her degenerative arthritis and increasing back pain.[12]

The ALJ cannot be said to have fully discredited this evidence, even if it is based on Ms. Kelly's self-reports. Later in the decision, the ALJ concluded that the state agency medical consultants' opinions were only "somewhat persuasive" due to being only "partially consistent" with this evidence specifically.[13] The ALJ found that this evidence "would imply that [Ms. Kelly] should have some postural and/or manipulative limitations[,]" which the state consultants' opinions did not account for.[14] And the ALJ presumably included limitations in Ms. Kelly's RFC for "no more than frequent handling duties" and "no lower extremity foot control operation duties" on this

---

[9] Def.'s Br. at 15; Tr. at 63, 622.

[10] Tr. at 606.

[11] *Id*.

[12] *Id*. The rheumatologist also remarked that day that "[h]er rheumatoid arthritis is still not under great control though I do suspect she is having a lot of . . . chronic pain related to her poorly controlled degenerative arthritis as well." Tr. at 610.

[13] Tr. at 64.

[14] *Id*.

3

basis.[15]

Neither the ALJ nor the Commissioner explained how Ms. Kelly's reported ADLs are inconsistent with this evidence or with her subjective complaints. Ms. Kelly reported being able to (1) dress herself, (2) prepare daily five-minute meals of sandwiches, cereal, or soup, (3) drive a car, (4) go out alone, and (5) shop once a month in stores or by telephone.[16] Ms. Kelly's ability to engage in these modest activities does not seem inconsistent with her reports that she cannot write, type, or open pill bottles.[17] Nor do these activities particularly undermine Ms. Kelly's claims that she has problems lifting, standing, walking, sitting, climbing stairs, squatting, reaching, and bending.[18] After all, "a claimant need not prove she is bedridden or completely helpless to be found disabled."[19]

Perhaps these proffered reasons would have proven more convincing had the remaining *Polaski* factors favored a finding of not disabled. But that is not the case here. The records indicate that Ms. Kelly's rheumatoid arthritis was poorly controlled despite multiple treatment modalities, and that her pain and other symptoms stemming from her multiple impairments had failed conservative treatment. On this record, the Court finds that the ALJ failed to provide the "good reasons" required to substantiate his credibility findings, and the evidence supporting the decision is less than substantial. The Court will therefore REVERSE and REMAND this case for further administrative review. Ms. Kelly's Motion for Leave to File Additional Evidence (Doc. 9) is DENIED as moot.

---

[15] Tr. at 57.

[16] Tr. at 59, 389-96.

[17] Tr. at 56-58.

[18] Tr. at 58.

[19] *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989) ("The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.").

IT IS SO ORDERED this 20th day of March 2024.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE